UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELL MAPES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:16-cv-03329-MJD-LJM |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff Michell Mapes ("Mapes") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Disability Insurance ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act").  *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3).  For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner and **REMANDS** Mapes's application to the SSA for further proceedings.

**I. Background**

In April 2013, Michell Mapes protectively filed applications for DIB and SSI, alleging disability beginning April 29, 2013. [Dkt. 14-5 at 2-16 (R. 187-201).] Mapes's application listed lupus and immune deficiency as her disabling conditions.[1] [Dkt. 14-6 at 6 (R. 219).] Mapes's applications were denied initially on July 2, 2013 [Dkt. 14-4 at 2-9 (R. 112-19)] and upon reconsideration on October 17, 2013. [Dkt. 14-4 at 11-16 (R. 120-126).] Administrative Law Judge

---

[1] Mapes recited the relevant factual and medical background in her opening brief.  [*See* Dkt. 17.]  The Commissioner, unless otherwise noted herein, does not dispute these facts.  [*See* Dkt. 18.]  Because these facts involve Mapes's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background the parties' briefs and articulate specific facts as needed below.

1

Kimberly Sorg-Graves ("ALJ") held a hearing on Mapes's application in March 2015. [Dkt. 14-2 at 43-74 (R. 42-73).] On July 20, 2015, the ALJ issued a decision finding that Mapes was not disabled. [Dkt. 14-2 at 24-37 (R. 23-36).] The Appeals Council denied Plaintiff's request for review on October 24, 2016 [Dkt. 14-2 at 2-7 (R. 1-6)], making the ALJ's decision the final decision of the Commissioner. Mapes timely filed her complaint in this Court, seeking judicial review of the Commissioner's decision. [Dkt. 1.]

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, or one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and either cannot perform her past relevant work or has no past relevant work but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and

2

assessing the claimant's remaining capacity for work related activities. S.S.R. 96-8p, 1996 WL 374184.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.2d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not contain a complete written evaluation of every piece of evidence." *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1997). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision. The ALJ must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to his conclusion." *Dixon*, 270 F.3d at 1176. Scope of review is confined to the rationale offered by the ALJ. See *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010).

### III. The ALJ's Decision

The ALJ first determined that Mapes met the insured status requirement of the Act through December 31, 2015 and did not engage in substantial gainful activity since December 15, 2012. [Dkt. 14-2 at 26 (R. 25).] At step two, the ALJ found Mapes's severe impairments to include "lupus, osteoarthritis, depression, anxiety, and posttraumatic stress disorder." [Dkt. 14-2 at 26 (R.

25).] At step three, the ALJ found that Mapes did not have an impairment or combination of impairments that meets or medically equals a Listing. [Dkt. 14-2 at 27-29 (R. 26-28).]

Before step four, "[a]fter careful consideration of the entire record," the ALJ determined that Mapes had the RFC to perform sedentary work with the following specific restrictions: "[Mapes] can no more than frequently finger; is limited to simple repetitive work tasks without a strict production rate; no more than occasional changes in the work setting; at least superficial supervision or oversight as much as once or twice per shift." [Dkt. 14-2 at 29 (R. 28).] At step four, the ALJ found that Mapes was unable to perform her past relevant work as a punch press operator and hand painter. [Dkt. 14-2 at 35 (R. 34).] After considering Mapes's age, education, work experience, and RFC, the ALJ found that Huffman could perform several jobs that existed in significant numbers in the national economy. [Dkt. 14-2 at 36 (R. 35).] These jobs included document preparer, printed circuit board assembly screener, and food and beverage order clerk. [Dkt. 14-2 at 36 (R. 35).] Based on these findings, the ALJ concluded that Mapes was not disabled under the Act. [Dkt. 14-2 at 37 (R. 36).]

## IV. Discussion

Mapes makes three arguments as to why the decision of the Commissioner should be reversed. First, Mapes argues that the ALJ erred when she found that Mapes's impairments did not meet Listing 14.02. Second, Mapes argues that the ALJ's credibility finding was patently wrong because she equated providing child care to the ability to sustain work activity. Third, Mapes argues that the ALJ failed to account for difficulties in concentration, persistence, or pace in her hypothetical RFC assessment. The Court addresses each argument in turn.

### A. Listing 14.02

Mapes argues that the ALJ impermissibly found that Mapes's Systemic Lupus Erythematosus[2] ("SLE") did not meet or equal Listing 14.02.[3] Specifically, Mapes argues that the ALJ ran afoul of the treating physician rule by discrediting Dr. Flaugher's opinion that Mapes meets Listing 14.02. [Dkt. 17 at 24-25.] The Commissioner responds that the ALJ gave ample support for her decision.

Dr. Flaugher, Mapes's treating physician since 2013, completed several physical exams between August 2013 and May 2014 related to her SLE symptoms. In particular, Dr. Flaugher assessed Mapes with fatigue, fever, generalized weakness, sudden unexplained weight loss, malar rash, immunologic disorder, positive antinuclear antibodies, and involvement of two or more organs/body symptoms. [Dkt. 14-8 at 5-8, 10-13, 29-32, 34-38 (R. 379-381, 384-387, 403-406, 408-412).] On January 5, 2015, Dr. Flaugher completed a medical provider questionnaire that listed Mapes's various symptoms and concluded that Mapes met Listing 14.02. [Dkt. 14-8 at 60-65 (R. 434-438).]

The ALJ gave Dr. Flaugher's opinions little weight, observing that "[Dr. Flaugher's] treatment notes are inconsistent with her opinion statement." [Dkt. 14-2 at 33 (R. 32).] In support, the ALJ interpreted one page of Dr. Flaugher's notes as follows:

> [D]uring multiple evaluations, she only had some noted limitations in her hands and her feet. Specifically, the claimant had documented evidence of swelling and limitation of motion in the joints of her right hand, and well as significant Heberden's and Bouchard's nodes in both hands. She had hammertoes on both feet. Otherwise, she was largely intact. . . . In fact, due to the lack of any significant objective support for the opinion, it can be given very little weight in assessing the claimant's functional capacity.

---

[2] "Systemic lupus erythematosus (SLE) is an autoimmune disease. In this disease, the body's immune system mistakenly attacks healthy tissue. It can affect the skin, joints, kidneys, brain, and other organs." *Systemic lupus erythematosus*, U.S. National Library of Medicine Medline Plus, https://medlineplus.gov/ency/article/000435.htm (last visited July 17, 2017).

[3] A claimant can meet the Listing for SLE by meeting either subpart A or subpart B. Summarizing broadly, subpart A is met by a diagnosis of SLE plus moderately severe medical symptoms, and subpart B is met by a diagnosis of SLE plus marked functional limitations. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 14.02.

[Dkt. 14-2 at 33] (R. 32) (citing Dkt. 14-8 at 32 (R. 406)).]

The treating physician rule requires the ALJ to give a physician's opinion controlling weight if it is "(1) supported by medical findings[] and (2) consistent with substantial evidence in the record."[4] *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). But "[e]ven when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685. 697 (7th Cir. 2014). Rather, the regulations require the ALJ to assign a weight to the opinion based upon several factors:

> (1) the "length of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion deserves; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.

*Scrogham*, 765 F.3d at 697 (quoting 20 C.F.R. § 404.1527(c)(2)-(5)) (alterations in original). When assigning weight, the ALJ is required to confront the evidence that does not support her conclusion, *Whitney v. Schweiker*, 965 F.2d 784, 788 (7th Cir. 1982), and must "build an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Despite the fact that the ALJ claimed to have considered "multiple evaluations," the ALJ relied upon a single page of Dr. Flaugher's treating notes to discount Dr. Flaugher's entire opinion. [Dkt. 14-2 at 33] (R. 32).] Specifically, the ALJ fails to mention—much less confront—the numerous findings in Dr. Flaugher's treating notes that support her conclusion that Mapes meets Listing 14.02. [Dkt. 14-8 at 5-8 (R. 379-381) (noting that Mapes's symptoms involve both

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. As Mapes's application was filed before March 27, 2017, the treating physician rule applies. *See id.* § 404.1527.

hematopoietic and musculoskeletal systems, and that tests show that Mapes is positive for ANA antibodies, fatigue, hair loss, malar rash, Raynaud's phenomenon, unexplained fever, unexplained weight loss, arthralgias, bone/joint symptoms, myalgia, rheumatologic manifestations, generalized weakness, and cytopenias on May 30, 2013); Dkt. 14-8 at 10-13 (R. 384-387) (noting that Mapes had lost mobility in both hands, had fatigue on a daily basis, and was positive for fatigue, generalized weakness, unexplained fever, Raynaud's, unexplained weight loss, hair loss, malar rash, arthralgias, myalgia, rheumatologic manifestations, and cytopenias on April 15, 2013); Dkt. 14-8 at 29-32 (R. 403-406) (notes from visit on August 6, 2013, addressing similar symptoms).] The ALJ's failure to consider the voluminous evidence that supported Dr. Flaugher's conclusions means that she has failed to support her step-three determination with substantial evidence, and remand is required so that the ALJ may consider the entirety of Dr. Flaugher's treating notes.

### B. ALJ's Credibility Finding

Mapes next argues that the ALJ's credibility finding rests upon the fallacious assumption that providing child care is consistent with the ability to sustain work activity. [Dkt. 17 at 28-30.] In response, the Commissioner argues that the ALJ properly applied the binding regulations at the time of her decision she also properly considered Mapes's activities of daily living when evaluating her subjective symptoms. [Dkt. 18 at 12-14.] In reply, Mapes argues that the Commissioner did not respond to Mapes's argument that the ALJ in this case impermissibly equated household chores and child care to capacity for full time employment. [Dkt. 19 at 7-8.]

The ALJ's credibility assessment generally warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility," *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), though a court has "greater freedom to review credibility determinations based on objective factors . . . rather than subjective considerations," *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). Among the factors an ALJ may consider in

evaluating credibility are daily activities, nature of pain, and use of medication or other treatment. *See* 20 C.F.R. § 404.1529(C)(3). While the ALJ may not disregard a claimant's testimony about the intensity of pain or its effect on her ability to work "solely because [it is] not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186,[5] the ALJ is still entitled to resolve any "discrepancies between the objective evidence and self-reports," *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). The critical inquiry is whether the ALJ's credibility determination is "reasoned and supported," as it may be overturned only if it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). A credibility determination is patently wrong if it "lacks any explanation or support." *Id.*

As the Seventh Circuit has explained on numerous occasions, an ALJ may not equate the ability to perform basic household work and child care with the ability to hold a job. This is because "extrapolating from what people do at home, often out of necessity, to what they could do in a 40-hour-a-week job is perilous . . . and sheer necessity may compel one to perform tasks at home no matter how painful." *Forsythe v. Colvin*, 813 F.3d 677, 679 (7th Cir. 2016); *see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) (holding that ALJ's "casual equating of household work to work in the labor market cannot stand," especially because ALJ attached great significance to the fact that claimant "is able to care for her personal needs and those of her two small children").

Here, the ALJ's credibility rested heavily on Mapes's supposed ability to perform basic housework and care for her child:

> Turning to the claimant's credibility, I find that there are inconsistencies in regards to her allegations of severe pain and the record as a whole. As to activities of daily living,

---

[5] Social Security Ruling 96-7p was superseded in March 2016 by Social Security Ruling 16-3p, 2016 WL 1119029, but S.S.R. 16-3p is not retroactive. Social Security Ruling 96-7p is therefore the operative ruling for this case, though the Court notes that the language in S.S.R. 16-3p is not substantially different, providing that the SSA "will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* at *5.

> she reported that she lived with her husband, and three children, ages eighteen, eleven, and two (Ex. 7E). She stated that she was responsible for caring for her two-year-old (Ex. 7E). She acknowledged being able to perform simple household chores, but she noted that she required frequent breaks due to her physical condition (Ex. 7E). Overall, I find that the claimant's activities of daily living are not as limited as one would expect, given her allegations of disability. While she discussed some limitations, she admitted that she was the primary caregiver for her young child. Caring for a child can be demanding, both physical and mentally. **The fact that the claimant was able to continue to provide care, without significant assistance, suggests that she could also sustain work activity.**

[Dkt. 14-2 at 64 (R. 63) (emphasis added).]

The ALJ's credibility determination evinces precisely the equation of child care to sustaining work activity—assuming that Mapes cares for her children because she is fully capable of doing so—that the Seventh Circuit has prohibited. To the contrary, the ALJ ignored Mapes's testimony that she cared for her children out of sheer necessity and with immense difficulty. For instance, when the ALJ asked Mapes about her childcare responsibilities:

> Q    Without your oldest son or your husband, would you be able to take care of the kids by yourself?
>
> A    **No, they would have to go to foster care.**

[Dkt. 14-2 at 64 (R. at 63) (emphasis added); *see* Dkt. 14-2 at 48 (R. 47) (Mapes stated that her husband cares for her youngest child).] The ALJ's utter failure to address this line of evidence and her noncompliance with binding Seventh Circuit precedent renders her credibility analysis patently erroneous. If Mapes's testimony were fully credited, she would likely be found disabled. Thus, the erroneous credibility assessment means that the ALJ's ultimate conclusion is not supported by substantial evidence and requires remand.

### C. ALJ's RFC analysis

Finally, Mapes argues that the ALJ failed to account for difficulties in concentration, persistence, or pace in her RFC assessment.

Generally, the ALJ's RFC assessment must incorporate all the claimant's limitations supported by the medical record. *See*, *e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 615 (7th Cir. 2010); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). This includes any deficiencies the claimant may have in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Limiting a hypothetical to "simple, repetitive work does not necessarily address deficiencies of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620.

Step three determinations are distinct from RFC assessments because "the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment [than the step 3 determination] by itemizing," in detail, the claimant's various functional limitations. S.S.R. 96-8p. However, where the ALJ identifies a limitation in concentration, persistence, or pace at step three and does not incorporate such limitation in the RFC, "in order to construct the 'logical bridge' from step three to the RFC determination, the ALJ [must explain why] these difficulties were not reflected with the RFC." *Curley v. Berryhill*, No. 1:16-cv-01773-SEB-MJD, 2017 WL 2427711, at *6 (S.D. Ind. May 12, 2017). The Court recently explained why courts heavily scrutinize the failure to incorporate a step three limitation in the RFC:

> Each impairment contributes to the calculus, and it is only by taking all of a claimant's impairments, whether severe or not, into account that an ALJ can accurately evaluate a claimant's true RFC to work or to perform past work. This requirement ensures that all of the necessary factors are included in the equation. Consequently, the ALJ should refer to limitations on concentration, persistence, or pace in the hypothetical in order to "focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 620–21. If the ALJ concluded that the limitations found at step three did not need to be reflected in the RFC, such conclusion should have been explained.

*Id.* at *3; *see Ison v. Colvin*, No. 1:16-cv-01302-SEB-MJD, 2017 WL 2437289, at *3-4 (finding that ALJ failed to build logical bridge where he failed to explain why the moderate difficulties from step three were not included in RFC).

10

In this case, the ALJ specifically found at step three that Mapes has moderate difficulties with concentration, persistence, or pace, stating that "formal testing revealed that [Mapes's] memory, attention, and concentration skills ranged from the extremely low to borderline range." [Dkt. 14-2 at 28 (R. 27).] But the ALJ did not explain why the limitations found at step three did not need to be reflected in the RFC. While the Commissioner argues that the ALJ gave significant weight to and properly translated the consulting physician's assessment, which would have not required any accommodations in concentration, persistence, or pace [Dkt. 18 at 11], this argument ignores the fact that the ALJ did, in fact, find Mapes has moderate difficulties in those areas and failed to address them in the RFC. Because the ALJ failed to build a logical bridge between her finding of moderate limitations in concentration, persistence, or pace and the RFC, the ALJ's error here provides yet another basis for remand.

## V.  Conclusion

For the foregoing reasons, the Court concludes that the ALJ has failed to build a logical bridge from the evidence to her conclusion that Mapes was not disabled. The Court therefore **REVERSES** the Commissioner's decision and **REMANDS** Mapes's application for further proceedings.

The Court's research suggests that the ALJ in this matter may no longer be employed with the SSA. Nonetheless, on remand, the Court strongly urges the Commissioner to assign a new ALJ to provide a fresh review of Mapes's application.

Dated:  18 JUL 2017

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically
on all ECF-registered counsel of record via
email generated by the court's ECF system.

Case 1:16-cv-03329-MJD-LJM   Document 20   Filed 07/18/17   Page 12 of 12 PageID #: